UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Aditya Raj Sharma, | Case No. 24-cv-2619 (JWB/DJF) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| Billy Eischen, Warden, FPC Duluth, | |
| Respondent. | |

---

In 2021, petitioner Aditya Raj Sharma pleaded guilty in this District to one count of wire fraud in violation of 18 U.S.C. § 1343. The court sentenced him to a 60-month term of imprisonment, later modifying it to 51 months pursuant to 18 U.S.C. § 3582(c). *See United States v. Sharma*, No. 20-cr-0261 (DSD/TNL) (D. Minn.) ("*Sharma*"). Mr. Sharma is currently serving his term of imprisonment at the Federal Prison Camp in Duluth, Minnesota. Mr. Sharma brought this action because he believes he is entitled by law to serve the remainder of his sentence somewhere else—either on home confinement or, alternatively, at a residential re-entry center ("RRC"). In his Petition for a Writ of Habeas Corpus[1] now before the Court ("Petition") (ECF No. 1), Mr. Sharma asks that the Federal Bureau of Prisons ("BOP") be directed to place him outside of prison for the remainder of his custodial term. The Court recommends denying the Petition for lack of jurisdiction and dismissing this matter without prejudice.

---

[1] Mr. Sharma filed his habeas petition on July 1, 2024 (ECF No. 1) and then filed an amendment to the habeas petition on July 10, 2024 (ECF No. 4). This Court construes both documents together (and the exhibits attached to them) as comprising the operative pleading in this matter. The Court refers to all these documents collectively as Mr. Sharma's "Petition".

1

In a felony Information filed June 3, 2021, the government alleged Mr. Sharma "capitalized on the COVID-19 pandemic to exploit emergency funding for needy, eligible small businesses by knowingly submitting sixteen false and fraudulent applications to receive loan proceeds [that he] knew he was not entitled to receive." *Sharma* (ECF No. 43 ¶ 1). Mr. Sharma admitted to the substance of the allegations and the court sentenced him to a 60-month term of imprisonment. Following the imposition of Mr. Sharma's sentence, the United States Sentencing Commission reduced the term of imprisonment recommended for Mr. Sharma's offense under the United States Sentencing Guidelines and made that change retroactive pursuant to 28 U.S.C. § 994(u). As a result, the sentencing court modified Mr. Sharma's term of imprisonment to 51 months pursuant to 18 U.S.C. § 3582(c)(2). Mr. Sharma is still serving that term of imprisonment.

The face value of a term of imprisonment can be misleading for two reasons. First, a handful of federal statutes in many instances reduce the overall term of custody imposed upon federal prisoners at sentencing. Any prisoner sentenced to more than one year in prison but less than a life term of imprisonment is entitled to "receive credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the court," so long as the prisoner is compliant with applicable rules while in prison. *See* 18 U.S.C. § 3624(b). Additionally, under the First Step Act of 2018 ("FSA"), prisoners participating in "evidence-based recidivism reduction programs" while in BOP custody may earn up to 15 days per month in time credits, 18 U.S.C. § 3632(d), and up to 365 days' worth of those time credits may be applied towards reducing the prisoner's overall custodial term, *see* 18 U.S.C. § 3624(g)(3).

Second, a "term of imprisonment" is not necessarily spent entirely in prison. For many prisoners, the final days of their terms of imprisonment are spent in "prerelease custody"—either in an RRC or on home confinement. Until recently, prisoners were eligible to spend (at most) only

the last 12 months of their terms of imprisonment in prerelease custody. *See* 18 U.S.C. § 3624(c)(1). The FSA, however, provides that any time credits the BOP does not apply towards shortening a prisoner's overall custodial term may be applied towards accelerating the date on which the prisoner becomes eligible for placement in prerelease custody. *See* 18 U.S.C. § 3632(d)(4).

Mr. Sharma has participated in evidence-based recidivism reduction programming while in BOP custody and, as a result, has earned time credits under the FSA. The overall length of his sentence has been reduced as a result, and if Mr. Sharma continues to participate in evidence-based recidivism reduction programming, he will have earned sufficient credits to potentially entitle him to a year off his sentence—the full amount for which he is eligible under the FSA. *See* 18 U.S.C. § 3624(g)(3); (ECF No. 16 ¶ 27). Mr. Sharma does not challenge this. And there appears to be no dispute that Mr. Sharma is eligible for placement in prerelease custody pursuant to section 3624(c)(2) separate and apart from the FSA, though the BOP to date has exercised its discretion under that provision to decline making such a placement—partly because Mr. Sharma is again under federal indictment for wire fraud, *see United States v. Sharma*, No. 23-cr-0375 (DSD/TNL) (D. Minn.), and partly because Mr. Sharma's disciplinary record while in prison has been less than exemplary (*see* ECF No. 16 ¶¶ 22-25). Mr. Sharma is not happy with that decision, but he states in his briefing that he is not challenging the BOP's discretionary choice not to place him in prerelease custody pursuant to section 3582(c)(2).[2] (*See* ECF No. 18 at 3.)

---

[2] Though Mr. Sharma states that he *never* sought relief pursuant to section 3624(c)(2) and raised his claim solely under the FSA (*see* ECF No. 18 at 3), this plainly is not true (*see* ECF No. 1 at 1). But in any event, this claim would be meritless if Mr. Sharma continued to raise it. *See, e.g.*, *Anderson v. Birkholz*, No. 21-cv-1420 (SRN/TNL), 2021 WL 3173641, at *2-3 (D. Minn. July 27, 2021).

The crux of the disagreement between the parties is whether the FSA entitles Mr. Sharma to placement in prerelease custody. Mr. Sharma contends that he has earned sufficient time credits under the FSA to be placed in prerelease custody immediately. Mr. Sharma further contends that the BOP lacks the discretion to decline such a transfer. According to Mr. Sharma, the BOP must place a prisoner in prerelease custody immediately upon that prisoner having earned sufficient time credits under the FSA to become eligible for placement in prerelease custody.

There are at least two problems with Mr. Sharma's argument. The first problem is that Mr. Sharma has not yet earned *any* time credits under the FSA that may be applied towards placement in prerelease custody. As of August 5, 2024, Mr. Sharma had earned a total of 345 days' worth of FSA time credits. (*See* ECF No. 16-1 at 2.) As explained above, up to one year of FSA time credits may be applied towards shortening the prisoner's sentence, and any remaining credits may be applied towards accelerating the date on which the prisoner may be placed in prerelease custody. Because Mr. Sharma has not yet earned one year's worth of FSA time credits, the BOP has applied the entirety of Mr. Sharma's time credits towards shortening his sentence. (*See* ECF No. 16-2 at 1.) To date, Mr. Sharma has not earned a single FSA time credit that the BOP has not already applied. Mr. Sharma plainly is not entitled to relief under the FSA for this reason.

The second problem is that, even if Mr. Sharma were entitled to relief under the FSA, he would not be entitled to *habeas* relief. "When a prisoner is not challenging either the fact or the duration of his confinement, habeas is not the proper remedy, and the court lacks jurisdiction over his claims." *Johnson v. Birkholz*, No. 21-cv-2017 (PJS/LIB), 2022 WL 3135304, at *1 (D. Minn. Aug. 5, 2022). A prisoner's claim that he should be transferred to prerelease custody or home confinement amounts only to an attack on the *conditions* of his confinement, and therefore, it is not cognizable on habeas review. *See Johnson*, 2022 WL 3135304, at *1 (citing *Spencer v.*

4

*Haynes*, 774 F.3d 467, 469-71 (8th Cir. 2014); *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam)). Put another way, a prisoner may invoke habeas corpus to allege that he should spend less time in custody overall in whatever setting, but not to allege that he should serve part of his sentence at home or in an RRC.

Mr. Sharma raises two principal counterarguments to this. First, Mr. Sharma correctly points out that courts in other jurisdictions have granted habeas relief on behalf of prisoners seeking transfer to prerelease custody under the FSA earlier than the BOP would allow. *See, e.g.*, *Woodley v. Warden, USP Leavenworth*, No. 24-2053-JWL, 2024 WL 2260904, at *2-4 (D. Kan. May 15, 2024). But this Court is obligated to follow the decisions of the United States Court of Appeals for the Eighth Circuit, and under Eighth Circuit case law, "[w]hen a prisoner is not challenging either the fact or the duration of his confinement, habeas is not the proper remedy, and the court lacks jurisdiction over his claims." *Johnson*, 2022 WL 3135304, at *1 (collecting Eighth Circuit cases)). Other courts have interpreted the law of their respective jurisdictions differently, but the Eighth Circuit's interpretation of the Court's habeas jurisdiction controls in this matter.

Second, Mr. Sharma argues the BOP's failure to award the time credits he believes he is owed is not entitled to deference following the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). But *Loper Bright* and the decision it overturned, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), addressed the deference federal courts owe to an agency's interpretation of an ambiguous statute. The rule that conditions-of-confinement claims cannot be raised in habeas petitions is not derived from the BOP's interpretation of the FSA or any other federal law. Instead, it is the product of prior judicial interpretation of the scope of the federal habeas statute. That *Chevron* is no longer good law is

5

thus entirely irrelevant to this case, and Mr. Sharma is not entitled to habeas relief. His habeas petition should be denied, and this matter should be dismissed for lack of jurisdiction.

A few loose ends remain, however. First, the Court lacks jurisdiction over Mr. Sharma's claim due to the manner in which he raised it—that is, he brought his claim in a habeas petition and not through an alternative procedural vehicle. But the form in which a pro se litigant presents a claim does not necessarily dictate the outcome of a case, and in appropriate circumstances, the Court may reinterpret a pro se litigant's claim arising under the correct procedural vehicle. *See Spencer*, 774 F.3d at 471. In this case, however, reinterpretation of Mr. Sharma's Petition likely would do Mr. Sharma little good—and indeed, it would only cost him money. As explained above, Mr. Sharma has not earned any FSA time credits that the BOP has not already applied to his sentence, and therefore, he has no plausible claim under any legal theory. Moreover, a prisoner filing a non-habeas civil action is responsible for the entirety of the $350.00 statutory filing fee, regardless of whether the prisoner qualifies financially for *in forma pauperis* status. *See* 28 U.S.C. § 1915(b). Dismissal of this matter for lack of jurisdiction is therefore a better result for Mr. Sharma than reinterpretation of the Petition as raising non-habeas claims.

Second, Mr. Sharma asked the Court to expedite the briefing in this matter and requested an expedited hearing because of the purported urgency of his claim. (*See* ECF No. 9.) The Court granted his request for expedited briefing in part and denied it in part but postponed making any recommendation on whether to conduct a hearing until after briefing was completed. (*See* ECF No. 10.) Following its review of the parties' briefing, the Court concludes that a hearing is not necessary for the disposition of Mr. Sharma's claims. The Court therefore recommends Mr. Sharma's motion (ECF No. 9) be denied to the extent that it remains pending.

6

Third, Mr. Sharma alleges the federal government falsified two documents and asks that sanctions be imposed on the government, that criminal charges be brought against the Respondent, and that summary judgment be granted on his behalf.  (*See* ECF No. 11.)  These requests are frivolous. Mr. Sharma has not submitted sufficient evidence from which to conclude that either document was, in fact, falsified.  Furthermore, the putative falsifications Mr. Sharma alleges involve minor discrepancies as to when the BOP may have received or sent certain documents related to the administrative review process.  It is very difficult to see what the government would have to gain from these alleged falsifications.  This motion should also be denied.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The Petition for a Writ of Habeas Corpus of petitioner Aditya Raj Sharma (ECF No. [1]) be **DENIED**.

2. This action be **DISMISSED WITHOUT PREJUDICE**.

3. Mr. Sharma's Motion for a Hearing (ECF No. [9]) be **DENIED**.

4. Mr. Sharma's Motion for Sanctions (ECF No. [11]) be **DENIED**.

Dated: August 28, 2024  *s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).